GEORGE VASSILAKIS, T/A ST. JOHN'S FOOD SHOP, PLAIN-TIFF-RESPONDENT, v. GLEN FALLS INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued November 6 and 8, 1967—Decided January 22, 1968.

Mr. *Mark D. Larner* for appellant (*Messrs. Budd, Larner, Kent and Gross,* attorneys).

Mr. *Victor W. Hart* for respondent (*Messrs. Hart, Mandis, Rathe and Woodcock,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. ▇ The defendant carrier refused to defend a negligence suit brought by Betty and Benjamin Rosenberg on the ground that the insured Vassilakis had

failed to give timely notice of the occurrence of the accident. Vassilakis brought this action for a declaration of defendant's obligation to defend. The trial court, sitting without a jury, found for Vassilakis, but the Appellate Division reversed and remanded the cause for further findings. One judge of the Appellate Division dissented, saying he believed the carrier was entitled to prevail. There being a dissent, the carrier prosecuted this appeal to us as of right. *R. R.* 1:2–1(b).

The accident occurred on December 22, 1961. The insured says he first learned of it when he received a letter dated July 23, 1962, from an attorney for the Rosenbergs. The insured notified his broker, who in turn notified the carrier, apparently on August 1. On August 17 the carrier took a statement from the insured. By letter dated September 20 the carrier gave notice of its reservation of a right to disclaim for alleged breach of the notice provision. The carrier never did undertake to defend. Rather it disclaimed on December 14, long before the Rosenbergs sued. They started their suit in July 1963 and this declaratory action followed. No point is made by the insured with respect to the time interval between notice and the disclaimer, and hence we make no comment upon it.

█ The insured operated a restaurant in Englewood and the liability policy covered that operation. It is not disputed in this action that Mrs. Rosenberg fell in front of the place of business. Her husband brought her into the restaurant to telephone for aid. She was taken to a hospital in an ambulance. According to the insured and his nephew, John Elliott, who was then his partner in the business, Elliott knew only that someone fell somewhere outside and entered their place of business to use the phone. If the insured knew no more, there clearly was no breach of the notice provision of the policy since there was nothing to suggest a claim against him. See *Cooper v. Government Employees Ins. Co.,* 51 *N. J.* 86, decided this day. The carrier, however, asserts that Rosenberg told Elliott that his wife fell on a mat

which the insured had placed outside the premises, and it is this statement which the carrier says should have alerted the insured to the potential of a claim. The majority of the Appellate Division agreed that this would be so and remanded the matter to the trial court for explicit findings as to whether the insured had that specific information.

Vassilakis and Elliott both testified there was no reference to a mat. Vassilakis, who worked in the kitchen, denied knowing anything of the incident at the time. Elliott said he recalled a commotion when an injured woman was brought into the restaurant to await help, but had no idea where she fell and no notion that any claim was in the offing. The letter from the attorney for the Rosenbergs referred to above made no mention of a mat, saying only that the client was injured by "a fall she suffered on the negligently maintained front steps of your store premises." The insured admits a mat could have been there if the weather was bad, since it had been the practice at such times to place a mat in front of the steps leading to the entrance.

To establish knowledge of a claim that Mrs. Rosenberg fell over the mat, the carrier relied upon written statements it took from Vassilakis and Elliott and also on the testimony of Rosenberg.

The written statements are not impressive. As to the statement taken from Vassilakis, dated August 17, 1962, we see no conflict with his testimony. Two statements were taken from Elliott on September 23, 1963 at his home in New York, long after he ceased being a partner of Vassilakis. The second statement, which in essence duplicated the first, was in Elliott's handwriting. Why the second statement was taken does not appear. In any event, the carrier sought by the statements to show (1) that Elliott gave no notice because he held the unreasonable view that he need not report a claim unless he personally witnessed the accident, and (2) Elliott knew at the time of the accident that the Rosenbergs claimed the mat caused the fall.

[3.] The statements cannot be so read. As to the first proposition, it is perfectly plain that Elliott said he knew nothing more than that a woman injured somewhere outside the premises was brought in solely to seek help. The thrust of the statements was that he had no notion that a claim was being advanced. Nowhere does there appear a categorical assertion that although he understood a claim was made, he believed he was under no obligation to report it because he did not witness the incident. As to the second proposition, again there is no plain statement that Elliott heard a reference to the mat at the time of the accident. Elliott testified the composition of the statements was the investigator's, and that the investigator assured him he was acting in his interest. The carrier did not produce the investigator notwithstanding that the record strongly demanded his production. The only reasonable conclusion is that the investigator deliberately created ambiguities in the statements to the end that Elliott might be confounded at the trial. As we have said, there was no simple, direct statement of the facts the carrier would have us infer from the writings. The ease with which a professional investigator could articulate those simple propositions, coupled with the failure to produce him, convinces us that the statements were taken in bad faith and are entitled to no credit.

Finally, there is the testimony of Rosenberg who said that when he brought his wife into the restaurant to telephone for medical aid, he told a man in white behind the counter who looked like Elliott that his wife "fell on account of the mat," that the man behind the counter turned to another, identified by Rosenberg at the trial as Vassilakis, and spoke to him "in a different language" and "This man then went out into the street and picked up this mat and brought it into the store." Rosenberg could not say whether he said that his wife fell outside or inside the premises, but he was sure he mentioned the mat. Rosenberg did not say that he indicated a claim would be made. He did not leave his name, and as already noted, there was no commu-

nication with the insured until the attorney's letter some eight months later.

As we have mentioned, the majority of the Appellate Division was troubled because the trial court made no explicit finding as to whether Vassilakis or Elliott knew at the time of the accident that it was claimed Mrs. Rosenberg fell over a mat. But it is plain the trial court concluded they had no reason to believe a claim would arise against them. Implicit is a refusal to find that they knew the mat was involved. Perhaps the trial court rejected Rosenberg's testimony silently because it was reluctant to state its disbelief of testimony, relevant upon the issue of negligence, in a proceeding in which the Rosenbergs were not represented and in which the full story of the occurrence was not explored. We, too, although satisfied that Rosenberg's interested testimony does not outweigh the insured's proofs on the issue of breach of the policy provision, would hesitate to assay the credibility Rosenberg's testimony would warrant in the context of a full hearing of the negligence issue.

Counsel for the insured had no doubt about the trial judge's thinking and hence did not object to the remand in his brief before us. However, after the brief was filed, the trial judge retired, and thus the remand would require a new hearing. We do not believe the record warrants the retrial. We are satisfied the trial judge believed that Elliott knew only that Mrs. Rosenberg fell somewhere outside the premises and that he and Vassilakis reasonably had no thought that they were involved in any way. We add that with respect to the subject of prejudice, which was tried as an incident to the claim of breach and which we have this day held must be shown in addition to a breach, *Cooper v. Government Employees, Ins. Co., supra,* 51 *N. J.* 86, the trial court found as a fact that prejudice was not proved. In these circumstances, the judgment of the trial court should be affirmed.

The judgment of the Appellate Division is reversed and the judgment of the trial court is affirmed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN and HANEMAN—6.

*For affirmance*—None.