113 N.J. Super. 514 (1971)
274 A.2d 327
ROBERT H. BRYNILDSEN, PLAINTIFF,
v.
AMBASSADOR INSURANCE COMPANY, A CORPORATION OF THE STATE OF VERMONT DOING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 16, 1971.
*516 Mr. Lee Trucker argued the cause for plaintiff (Messrs. Norris, McLaughlin & Trucker, attorneys).
Mr. Allan Maitlin argued the cause for defendant (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
BEETEL, J.C.C. (temporaily assigned).
This case comes before the court on cross-motions for summary judgment brought by the parties under R. 4:46-2. There appearing to be no genuine issue as to the facts involved, it would appear that this matter is ripe for determination.
On or about April 17, 1968 one Stanley Lenzner purchased a fire insurance policy from defendant on premises owned by him at 292 Peshine Avenue in Newark, New Jersey. The face amount of the policy was $5,000, and it ran from April 17, 1968 to April 17, 1969. Attached to the body of the policy and made a part thereof was a "warranty endorsement"[1] by which the insured party warranted that there was "in full force and effect, covering the same property insured hereunder a policy of insurance identical with this policy in all respects, * * * issued by Jefferson Insurance Co. in the amount of $10,000.00." Another policy of insurance in the amount of $5,000, issued by the Cumberland Insurance Co., was also in effect when the policy written by defendant *517 became effective, but no reference to the Cumberland policy appears in the warranty clause or elsewhere in defendant's policy.
On November 15, 1968 plaintiff purchased the premises from Lenzner. In December 1968, the Jefferson policy was cancelled, and when voluntary placement could not be made, it was replaced by a $20,000 policy issued by Aetna Insurance Company through the "Fair Plan" or assigned risk plan. Plaintiff's attorney frankly conceded at the hearing on the motion that no notice of the cancellation by Jefferson or the obtaining of the Aetna policy was given to Ambassador by plaintiff or plaintiff's attorney, and does not contend that it had no opportunity to do so.
On January 28, 1969 the insured property was damaged by fire to the extent of approximately $18,000.00. Defendant has refused to admit liability, maintaining that the warranty endorsement was breached by the cancellation without notification.

I
Plaintiff urges that since defendant's position under its contract of insurance was strengthened rather than prejudiced by the substitution of the Aetna policy for the Jefferson policy, in that its potential liability was clearly diminished, this court should prevent Ambassador from denying liability by following the rationale set forth in Cooper v. Government Employees Insurance Co., 51 N.J. 86 (1968).
Defendant, on the other hand, urges that since there are no ambiguities contained in the language of the warranty, and since plaintiff admits there was no notification of change of insurance company or amount of coverage, the warranty was plainly breached and the policy coverage therefore was voided. Defendant alleges that whether its position was hindered or helped by the activities is irrelevant when dealing with the question of breach of an express warranty.
This court is in accord with the general principle of the law of insurance that forfeitures are not looked upon *518 with favor, and is disposed to avoid forfeiture if by reasonable interpretation it can do so, Neilson v. American Mut. Liab. Ins. Co., 111 N.J.L. 345 (1933). It would appear to be the duty of this court to construe a forfeiture clause in such a manner as to confer coverage, where an interpretation defeating forfeiture is reasonably deducible from the terms or words used. Hampton v. Hartford Fire Ins. Co., 65 N.J.L. 265, 47 A. 433 (1900); 3 Williston on Contracts, §§ 620 and 790; 3 Corbin on Contracts 115, § 552. See also Rockmiss v. New Jersey Mfrs. etc. Co., 112 N.J.L. 136 (1933). The insurer having in most cases drawn the particular policy, all doubt as to the construction of terms in an insurance policy is to be construed most strongly against the insurer and in favor of the insured. Jorgensen v. Metropolitan Life Ins. Co., 136 N.J.L. 148, at 151 (1947); Connell v. Commonwealth Cas. Co., 96 N.J.L. 510 (E. & A. 1921).
The words of an insurance policy, however, must be given their ordinary and usual meanings and if there is no ambiguity, a strained or distorted construction will not be applied. If it is consistent with public policy, the terms of an insurance will be enforced. Jorgensen v. Metropolitan Life Ins. Co., above; Downs v. N.J. Fidelity & Plate Glass Ins. Co., 91 N.J.L. 523 (1917). See also Schneider v. New Amsterdam Casualty Co., 22 N.J. Super. 238, 242-243 (App. Div., 1952).
The current approach to insurance contract interpretation is to be found in Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 295, 306 (1965), and Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475 (1961). Cooper v. Government Employees Insurance Co., 51 N.J. 86, 94 (1968), urged by plaintiff to be controlling in the case at hand, is factually distinguishable from the case at bar in that it considers a "condition" in a policy and not a "warranty," although it does demonstrate the tendency of the modern judiciary to protect the consumer from unreasonably strict construction of adhesion contracts.
*519 The Allen case points that
(W)hile insurance policies and binders are contractual in nature, they are not ordinary contracts but are "contracts of adhesion" between parties not equally situated. [Citing cases] The company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospectives assured is a layman unversed in insurance provisions and practices. He justifiably places heavy reliance on the knowledge and good faith of the company and its representatives and they, in turn, are under correspondingly heavy responsibility to him. His reasonable expectations in the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind. Thus we have consistently construed policy terms strictly against the insurer and where several interpretations were permissible, we have chosen the one most favorable to the assured. [citing cases]
In Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475 (1961), we left little doubt as to our current approach by using this pertinent language: "When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow." Francis, J. in Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953), aff'd 15 N.J. 573 (1954), [44 N.J. at 305-306.]
The tendency of our courts to construe liberally rather than strictly adhesion contracts can be readily seen in areas other than insurance, the most notable example being the landmark decision in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 389 (1960), where the Supreme Court looked with extreme disfavor on the uniform automobile warranty of the Automobile Manufacturer Association, used at the time by all major automobile manufacturers. Thus the perimeter of public policy appears to be ever increasing, and although courts continue to recognize that persons should not be unnecessarily restricted in their freedom to contract, there is an increased willingness to invalidate contractual provisions which clearly tend to injure the public in some way. See Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 538, 554 (1967).

*520 II
Keeping in mind the general tendency toward liberal construction indicated by the decisions above, we must turn now to the "warranty endorsement" and the admitted breach thereof. The terms of the endorsement[2] are clear and explicit, and leave no doubt as to the obligations of the insuror and the insured. The language relied upon by defendant Ambassador provides that
* * * the coverage provided under this policy shall be effective only so long as the total amount of insurance indicated in the above warranty is and remains in full force and effect, without any reduction whatsoever, in the insurance company indicated above, and no other. * * * [I]f said policy is cancelled or the terms or conditions thereof changed, then, unless notice is given to the company of such * * * cancellation or change and the consent of the Company to continuation of this policy notwithstanding such * * * cancellation or change is endorsed hereon the coverage afforded under this policy shall, without notice to the insured, immediately and automatically cease and this policy shall become NULL AND VOID. [Emphasis supplied]
In general, an insured is chargeable with knowledge of the contents of a policy, in the absence of fraud or unconscionable conduct on the part of the carrier. Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 115, at pg. 121-122 (1962); Heake v. Atlantic Cas. Co., 15 N.J. 475, 483 (1954). In the present case plaintiff does not contend that it was unaware of its duty to notify Ambassador of the cancellation of the Jefferson policy, nor does he seek to show that he had no reasonable opportunity to so notify Ambassador during the period between the Jefferson cancellation and the date of the fire.
A warranty differs from a representation or a condition, in that a warranty, unlike representations and conditions, is actually an integral part of the contract, relating to risk. Representations are statements preceding the *521 contract, not being a part thereof, and need only be substantially true. Generally, an untrue representation will not invalidate an insurance contract unless there has been fraud. Procacci v. U.S. Fire Insurance Co., 118 N.J.L. 423, 426 (1937). To be relieved of liabiilty for the breach of a condition in an insurance policy, an insurer has the burden of proving not only the breach, but also of showing that the breach resulted in a likelihood of appreciable prejudice to it. Cooper v. Government Employees Ins. Co., Inc., 51 N.J. 86, 94 (1968).
Plaintiff urges that this court should ignore the difference between warranties, representations and conditions, holding the insurance company liable under the terms of the Cooper case above, since there has been no active showing of prejudice on defendant's part. While such a construction may be suggested by the pronouncements of the Supreme Court in Henningsen v. Bloomfield Motors, Inc., above, and its progeny, this interpretation would be a novel one which we are not constrained to adopt, especially in view of the fact that there is no authority in this State ignoring the difference between warranties and conditions or representations in contracts of insurance.
In the case at bar plaintiff knew it was obliged to notify defendant of any change in or cancellation of the Jefferson policy, yet when a stronger policy with a larger carrier was obtained, it failed to carry out its acknowledged duty. Clearly, plaintiff has not shown equitable considerations sufficient to justify this forum's redrafting of the insurance contract in a more equitable fashion. Such other considerations may in fact exist, but since they have not been set forth in the pleadings or testimony, this court will not engage in speculation.
Accordingly, summary judgment will be entered in favor of defendant Ambassador Insurance Company. Plaintiff's cross-motion for summary judgment will be denied. No costs.

*522 APPENDIX A

WARRANTY ENDORSEMENT
Attached to and forming part of Policy Number F12145 issued to Stanley Lenzner and Lois Lenzner By AMBASSADOR INSURANCE COMPANY of Montpelier, Vt. Date of Endorsement 4/17/68.

WARRANTY
The assured hereby acknowledges that the Company has not independently underwritten the risk covered by this policy but that the Company has, rather, issued its policy only because of its reliance on the assured's warranty below of other identical insurance on the property covered, in the amount stated, in the company named.
Knowing that the Company is relying upon the following warrant of the assured and that if said warranty were not strictly correct the Company would not issue its policy, the assured warrants that there is presently in full force and effect, covering the same property insured hereunder a policy of insurance identical with this policy in all respects, except rate which must be not more than the rate at which this policy is written, issued by Jefferson Insurance Co. in the amount of $10,000.00.
If, at the time this policy is issued, this warrant is in any respect incorrect, to wit, if there is no policy presently in full force and effect; or if there is a policy presently in full force and effect but it either (a) does not cover the same property insured hereunder, or (b) it is not in all respects identical with this policy, or (c) it is issued by any company other than the named insurance company, or (d) it is in any amount less than the amount stated, or (e) any combination of (a) and/or (b) and/or (c) and/or (d), then this policy is and shall be NULL AND VOID and the Company shall not be liable for any payment hereunder except for the repayment of the premium.
*523 Any provision of this policy to the contrary notwithstanding, the coverage provided under this policy shall be effective only so long as the total amount of insurance indicated in the above warranty is and remains in full force and effect, without any reduction whatsoever, in the insurance company indicated above, and no other. If the total amount of insurance indicated is reduced in any amount whatsoever, or if said policy is cancelled or the terms or conditions thereof changed, then, unless notice is given to the Company of such reduction, cancellation or change and the consent of the Company to continuation of this policy notwithstanding such reduction, cancellation or change is endorsed hereon, the coverage afforded under this policy shall, without notice to the insured, immediately and automatically cease and this policy shall become NULL AND VOID. Thereafter, the Company shall not be liable for any claim hereunder except for the return of the premium for the period from the date of discontinuance or diminution or change of coverage to the end of the term of the policy.
The insured hereby acknowledges and agrees that any action, adjustment or settlement of any loss with the insurance company indicated above is independent of any claim made hereunder and that such action, adjustment or settlement shall in no way bind or impose liability on the Company.
/s/ G. Kenneth Taylor
NOTES
[1] See Appendix A
[2] See Appendix A