Murray GLADSTONE,
Plaintiff-Appellant,

v.

FIREMAN'S FUND INSURANCE
COMPANY, Defendant-Appellee.

No. 433, Docket 75–7435.

United States Court of Appeals,
Second Circuit.

Argued Jan. 23, 1976.

Decided May 17, 1976.

Bernard J. Jaffe, New York City (Leo M. Laurance, New York City, of counsel), for plaintiff-appellant.

James M. Hughes, New York City (Paul H. Murphy, Bigham Englar Jones & Houston, New York City, of counsel), for defendant-appellee.

Before MOORE, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff Murray Gladstone appeals from an order of the United States District Court for the Southern District of New York,

Henry F. Werker, *Judge*, which granted the defendant Fireman's Fund Insurance Company's ("Fireman's Fund") motion for summary judgment in an action based upon a contract of insurance; federal jurisdiction rests on the parties' diversity of citizenship. Because there is still an unsettled dispute with respect to material issues of fact, we find the grant of summary judgment here to have been inappropriate and consequently reverse and remand the case to the district court for further proceedings.

The underlying dispute between the parties arises from a theft loss incurred by Gladstone on May 21, 1971 at his recently leased jewelry store in Westwood, New Jersey. Fireman's Fund had, on May 7, 1971 issued to Gladstone a binder for a Jewelers' Block Policy to cover such losses. In denying liability for the loss, Fireman's Fund maintains that the policy was void because Gladstone had falsely answered material questions on his April 27, 1971 application or "proposal" for insurance. It is Fireman's Fund's position that, according to the terms of the policy and New Jersey law, which both parties agree must be applied to the instant case, the "proposal" is a part of the contract and that the applicant warranted the truthfulness of his answers to the proposal's questions. Fireman's Fund further argues that Gladstone also breached several conditions precedent to insurance under the policy by failing to accord the company proper written notice of loss and sworn proof of loss.

Based upon Gladstone's responses to Fireman's Fund's interrogatories, the district court, finding that "[s]ome of those 'answers' [in the proposal] now appear to be false," held that the "false" answers were breaches of material warranties, thus voiding the policy, and granted summary judgment in favor of Fireman's Fund. Gladstone asserts, and we agree, that in reaching its conclusion the district court overlooked disputed questions of fact that will determine the truthfulness of his answers to the proposal's questions.

The proposal's questions were prefaced by the following instruction:

"The answers to questions 2, 11a, 11c, 11d, 17c and 17d must be based on the 12 months [sic] period immediately preceding the date of this proposal."

It is this instruction that has engendered the dispute on appeal. Gladstone claims that the instruction is ambiguous when applied to the facts and, when considered in the light of the advice given him by the Fireman's Fund agent, his answers were not only true but also the only sensible answers he could give.

For fifteen years prior to October, 1970, Gladstone was the president, general manager and fifty percent owner of Modern Casting Corporation ("Modern Casting") of New York City, a manufacturer of gold castings for sale to other manufacturers and jobbers. In October of 1970 he sold his entire interest in Modern Casting to his partner. He then started a small wholesale jewelry business, operating out of his house and using as inventory the goods he had received as consideration for the sale of his interest in Modern Casting.

Subsequently, however, he decided to open a wholesale-retail jewelry business called "Jewelry by Gladstone." In furtherance of that goal he began having pieces of jewelry manufactured for him, and he purchased various precious and semi-precious stones which he added to others he had accumulated over the years. This stock was kept in Modern Casting's safe in New York and was insured for $25,000 under another Fireman's Fund policy not involved directly in this case. Gladstone also entered into a lease, to become effective on May 1, 1971, for premises located at 263 Center Avenue, Westwood, New Jersey. The lease covered office space on the second floor of the premises, which office space Gladstone was converting into his retail store.

On April 27, 1971, Robert J. Forrester, a special agent and underwriter employed by Fireman's Fund met with Gladstone at the store for the purpose of obtaining the proposal for the insurance involved herein. Gladstone claims that he gave Forrester a complete history of his background in the

jewelry trade. He further asserts that Forrester read the "proposal" questions to him and also entered the answers to the questions on that form. According to Gladstone, Forrester supplied answers, in terms of future inventory, to many of the questions which related to the extent of Gladstone's inventory. Further, Gladstone alleges that Forrester supplied the term "new business" in several answers, with an explanation that Fireman's Fund was interested only in the new retail business and not Gladstone's past wholesale operation.[1] Forrester disputes Gladstone's version of the April 27, 1971 meeting. According to Forrester, he asked Gladstone the questions on the form and merely transcribed Gladstone's answers. He denies that Gladstone ever informed him of any past jewelry business.[2]

The upshot of the April 27 meeting was that the proposal contained representations by Gladstone that do not necessarily correspond with his answers to pretrial interrogatories. The response to question # 2 of the proposal, which sought to determine the "nature of our business based on sales," indicated that the business was 90 percent retail and 10 percent wholesale. Similarly, responses to questions concerning the extent of property kept outside of the 263 Center Avenue premises during the past 12 months were variously, "None— New business" (for such property in Gladstone's custody) and "$2,500. estimated— New business" (referring to such property in the control or custody of others). Another question, # 17, sought the date of the last inventory taken and the exact value of it. The answers filled in on the form were "5-1-71" and "$35,000. approx." The district court found that these answers were "undeniably false" since there was no question that during the twelve months prior to the signing of the proposal Gladstone had been "in the jewelry business, that some portion of his inventory was not in his possession and that [he] had not taken an

1. Gladstone's affidavit in opposition to the motion for summary judgment states in part:

"After our preliminary conversation, he [Forrester] commenced filling out the proposal. There being only one copy, he asked the questions and wrote the answers. As we were talking, I was doing work in the store. I never saw the application. When I gave him the answer to question 17, I then signed where he showed me. I never read the application. I relied solely on the answers he inserted. He was a representative of the insurance company and I trusted him completely. When he started questioning me, more in particular question No. 2, he asked me in substance the following question: WHAT WILL THE PERCENTAGE OF MY INVENTORY BE WHEN I START THE NEW BUSINESS? He never asked me the percentages of my other business nor was it our intention to refer to the past twelve months. As we went along answering the questions, most of the questions he would answer with the phrase, 'New business' based on the information I had given to him in our preliminary conversation. When we came to question 17, he asked me about my inventory of my new business. I told him the inventory was incomplete. I told him my inventory was not in but it should be complete by the day I opened my new store. I informed him that part of my inventory had arrived. He saw this as I was working on it as we talked. As for the answer to question 17(e), the percentages given were approximate percentages referring to the new business. He was told that I never had carried silver, watches or certain other third party goods before. Therefore, the percentages would have to be guesstimates to equal 100%. In answer to questions 17(b), (c) and (d), he put in 'New business.' Mr. Forrester, by those answers, showed it was our intention at all times in this proposal to answer the questions only in relation to new business. There was never any question raised in answering the questions in this proposal relating to old business."

2. Forrester's affidavit describes the meeting somewhat differently as follows:

"I asked Mr. Gladstone the various questions contained in the Proposal and he thereupon furnished the answers to me, which answers I then proceeded to insert in the Proposal in my handwriting. This was done in the presence of Mr. Gladstone. The broker, Mr. William H. Bohde of W. M. Ross & Company, Inc., Upper Montclair, New Jersey, was also present during the course, of my questioning of Mr. Gladstone. Some of the answers to the questions are not in my handwriting. The written figure 5–1–71 in Question 17a. is not in my handwriting. The answers to Questions 17e(1) through (12) are not in my handwriting. The bottom section of the very last page of the Proposal which refers to rates is not in my handwriting."

inventory on May 1, 1971."[3] The district court also pointed out that Gladstone admitted that his jewelry business had been all wholesale prior to the signing of the proposal. Applying the substantive contract law of New Jersey,[4] the district court concluded that Gladstone was bound by the answers in the proposal even though the mistakes may have been honestly made, citing *Parker Precision Products Co. v. Metropolitan Life Ins. Co.*, 407 F.2d 1070 (3d Cir. 1969), that the answers were directly related to the policy's premium rate, citing New Jersey Statutes Annotated §§ 17:29A–6 and A–15 (1970), that since the answers were expressly made part of the policy by reference they were warranties, citing *Procacci v. United States Fire Ins. Co.*, 118 N.J.L. 423, 193 A. 180, 182 (1937), and that since the answers were warranties falsely made they voided the insurance policy, citing primarily *Brynildsen v. Ambassador Ins. Co.*, 113 N.J.Super. 514, 274 A.2d 327 (1971); *Guarraia v. Metropolitan Life Ins. Co.*, 90 N.J.L. 682, 101 A. 298 (1917).

On appeal Gladstone attacks the district court's first conclusion, that his answers were "undeniably false," by reasoning that it was based upon an erroneously broad interpretation of the proposal's instructions and a disregard of both the oral "instructions" allegedly given to him by Forrester and the alleged fact that his retail jewelry store was a new business. His essential contention is that the district court erred in granting summary judgment in favor of Fireman's Fund since the instructions were ambiguous and since a resolution of the factual dispute surrounding the completion of the proposal was necessary in order to determine the intent and understanding of the parties at that time. We agree.

■ As has been noted by this Court on numerous recent occasions, summary judg-

ment is a drastic device to be applied only when there are no material factual issues to be tried. In making that determination, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought . . . with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975); *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975); *Lowell v. Twin Disc, Incorporated*, 527 F.2d 767 (2d Cir. 1975); *National Life Insurance Company v. Solomon*, 529 F.2d 59 (2d Cir. 1975); *Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir. 1975); *Home Insurance Co. v. Aetna Casualty and Surety Co.*, 528 F.2d 1388 (2d Cir. 1976); *United States v. Bosurgi*, 530 F.2d 1105 (2d Cir. 1976).

■ Here there is certainly a dispute over the meaning of the proposal's instructions. Gladstone contends that his answers were in full compliance with the instructions since those instructions contemplated a situation where one who is operating a continuous business then applies for a new policy of insurance on that business. He claims that his answers were entirely correct since the business he was seeking to insure did not exist at the premises noted on the proposal during the twelve months prior to its signing. Fireman's Fund, on the other hand, asserts that the instructions included any jewelry business in which the applicant had been engaged, regardless of whether or not it was the same business for which he was seeking insurance.

Because the proposal on its face is ambiguous, and its interpretation may depend in part on the credibility of extrinsic evidence, not only is summary judgment improper, *Heyman v. Commerce and Industry Insur-*

---

**3.** We note that the answer "5–1–71" was an answer that could not have been intended or accepted as the date of the "last" inventory taken, since the answer obviously indicated a future date; as mentioned in the text, the meeting took place and the proposal was completed on April 27, 1971.

**4.** The district court properly concluded that there is no doubt that the forum state in this diversity action, New York, would apply the substantive law of New Jersey, "[Gladstone's] domicile, the place of contract negotiation and issuance, the location of the insured premises, and the place of the loss." *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954).

ance Co., supra; *National Life Insurance Co. v. Solomon, supra; Home Insurance Co. v. Aetna Casualty and Surety Co., supra*, but the question of interpretation is one for the trier of fact, not for the court alone. *See* Restatement (Second) of Contracts § 238(2) (Tent. Draft Nos. 1–7, 1973). In connection with such interpretation not only will that extrinsic evidence in the form of the agent Forrester's and Gladstone's own testimony on the events surrounding the proposal be admissible, *id.*,[5] but the ordinary canons of interpretation, *id.*, § 228 *et seq.*, including but not limited to §§ 231 and 232, will apply as aids to the trier.

We of course express no opinion as to which of the two interpretations of the instructions is correct in this case. We merely hold that the instructions in the proposal were not wholly unambiguous and that it was error to grant summary judgment under those circumstances.

Because it concluded that Gladstone had breached the warranties made in the proposal, the district court was not required to reach Fireman's Fund's further argument that there could be no recovery because of Gladstone's alleged failure to comply with the policy's conditions precedent, namely, written notice of loss and a sworn proof of loss. The district court observed, however, that the notice and proof of loss actually given by Gladstone did not comply with the policy's rigorous requirements.

■ We have examined the record below and find that to have granted summary judgment on those grounds would have been error. Assuming for the sake of argument that the notice and proof of loss requirements contained in the policy were not met by Gladstone,[6] there has been no proof or even an offer of proof by Fireman's Fund that it suffered any prejudice from Gladstone's technical failures. In 1968 the Supreme Court of New Jersey stated in unequivocal language in *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 90, 237 A.2d 870, 874 (1968), that in order for an insurer to avoid liability on the ground that the insured had failed to perform a condition precedent, the insurer must carry the burden of showing a "likelihood of appreciable prejudice" as a result of the failure. It is true that the *Cooper* decision involved automobile negligence coverage, but the New Jersey courts have not limited its rationale to such cases. *See Vassilakis v. Glen Falls Ins. Co.*, 51 N.J. 96, 101, 237 A.2d 875, 878 (1968) (in the absence of prejudice, insurer required to defend insured restaurant owner even though it was not notified of accident on the premises until eight months after its occurrence); *Brynildsen v. Ambassador Ins. Co., supra*, 113 N.J.Super. at 521, 274 A.2d at 331 (in action on a fire insurance policy court recognizes, although does not so hold on the facts, that insurer must show prejudice from a breach of a condition). We see no reason to conclude that the *Cooper* holding would not be applicable to insurers issuing Jewelers' Block Policy insurance for theft losses.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

**5.** *Gladstone urges that under New Jersey law Fireman's Fund is equitably estopped from urging an interpretation of the instructions different from that allegedly made by Forrester at the meeting. See Harr v. Allstate Ins. Co.,* 54 N.J. 287, 304, 255 A.2d 208, 218 (1969). *We feel no need to go that far in this case, but merely note, as in the text, that Forrester's alleged interpretation of the instructions will be a relevant aid in the factfinder's task.*

**6.** It must be noted that although the policy in question was bound on May 7, 1971 Fireman's Fund did not transmit a copy of the actual policy containing the conditions of insurance to Gladstone until June 18, 1971, significantly after the alleged loss on May 21, 1971. By June 1, 1971, Fireman's Fund had apparently launched a full scale investigation into the loss. We offer no opinion as to whether or not Fireman's Fund may have, under New Jersey law, waived the conditions, notwithstanding the policy's non-waiver clause, by its actions prior to the issuance of the policy containing the conditions.