742 A.2d 1013

PROGRESSIVE CASUALTY INSURANCE COMPANY, AN INSUR-
ANCE CARRIER, PLAINTIFF–RESPONDENT v. ROBERT MAT-
THEW HURLEY & DEVIL ELEVEN, INC., A NEW JERSEY
CORPORATION, DEFENDANTS–APPELLANTS/THIRD PARTY
PLAINTIFFS, v. COVERAGE CONSULTANTS, INC., A NEW
YORK CORPORATION, THIRD–PARTY DEFENDANT, v. JASON
JACOBS, FOURTH PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted November 16, 1999—Decided January 10, 2000.

Before Judges LANDAU, KIMMELMAN and ARNOLD.

*Boffa, Shaljian, Cammarata & O'Connor*, attorneys for appellants 3rd party plaintiffs (*John P. Nulty*, of counsel and on the brief).

*Berlin, Kaplan, Dembling & Burke*, attorneys for respondent (*Marc L. Dembling*, of counsel and on the brief).

*Litvak & Accardi*, attorneys for 3rd party defendant (*Anthony J. Accardi*, of counsel; *Daniel Antonelli*, on the brief.)

The opinion of the Court was delivered by

LANDAU, J.A.D.

Defendants Robert Hurley ("Hurley") and Devil Eleven, Inc. ("Devil"), a New Jersey corporation, appeal from a Law Division order granting summary judgment in favor of plaintiff, Progressive Casualty Insurance, Co. ("Progressive"). Plaintiff had filed a complaint seeking a declaratory judgment that Hurley was not

entitled to uninsured motorist (UM) coverage under Devil's commercial auto insurance policy for his injuries sustained in an automobile accident on December 12, 1993, in Sacramento, California. Defendants' counterclaim sought UM coverage for those injuries.[1] The motion was granted on the basis that Hurley, who was not involved with procuring the policy, was not entitled to UM coverage under the commercial auto insurance policy issued in New Jersey by Progressive for injuries sustained while driving a loaned motor vehicle involved in an automobile accident with an uninsured motorist in California.

Upon review of the record, we affirm, finding that there is no genuine issue as to any material fact and that plaintiff was entitled to summary judgment as a matter of law. *R.* 4:46–2; *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.2d* 146 (1995). Progressive was not required to provide UM coverage pursuant to *N.J.S.A.* 17:28–1.1 for a borrowed car neither registered nor principally garaged in New Jersey, and because the declaration page of the policy clearly showed that UM coverage was not provided.

These are the facts. On December 12, 1993, Hurley was involved in a motor vehicle accident in Sacramento, California with an uninsured motorist. At the time of the accident, he resided in Sacramento where he played professional basketball with the Sacramento Kings. Hurley was driving a Toyota 4 Runner loaned to him, presumably for promotional purposes, by the Folsom Lake Toyota dealership. Hurley received $60,000 in UM benefits under the Folsom Lake policy.

Plaintiff had issued a commercial motor vehicle policy to Devil pursuant to the New Jersey's Commercial Automobile Insurance

---

[1] Defendants also filed a third-party complaint against their broker, Coverage Consultants, Inc. ("Coverage"), contending that if the policy did not provide UM coverage, it was due to the broker's negligence. Coverage filed a fourth-party complaint against Jason Jacobs, Hurley's financial advisor/accountant. The third and fourth party complaints have been resolved, leaving only the UM coverage issue for our consideration on appeal.

Plan ("CAIP"). Devil was formed at the instance of Hurley's financial advisor, Jacobs, for tax purposes. A Ford Explorer was owned and insured by Devil with the plaintiff insurer through the broker, Coverage. Jacobs made the arrangements.

At their depositions, Hurley and his mother, who was listed as a Devil employee, both testified that they never had any conversations with the broker regarding the policy. A Coverage account executive confirmed in his deposition that he had no conversations with either of the Hurleys. Hurley said in his deposition that he understood that the policy was "to protect me in case if someone tried to sue me as a result of some kind of motor vehicle problem . . .," and that his financial advisor took out the policy "as blanket coverage for myself to protect myself and the employees of Devil Eleven. That's really all I knew about the policy."

At the time the initial Devil policy was purchased, it was necessary for Coverage to procure automobile insurance through CAIP because Hurley was then living in North Carolina, had a North Carolina drivers license, and had a poor motor vehicle abstract showing reckless driving and speeding violations. CAIP was established pursuant to *N.J.S.A.* 17:29D–1 "to provide for the apportionment of insurance coverage for eligible applicants who are in good faith entitled to but are unable to procure the same, through the voluntary market." Regulations adopted as *N.J.A.C.* 11:3–1.1 to –1.10, established and govern the Commercial Automobile Insurance Plan.

■ The New Jersey corporation, "Devil Eleven, Inc." was listed as the named insured and both defendant and his mother were listed as drivers under the Progressive policy, which was labeled as a "Business Auto Policy." As required by *N.J.S.A.* 17:28–1.1, a UM and UIM insurance endorsement was attached to the policy. However, *N.J.S.A.* 17:28–1.1 requires a UM and UIM insurance provision only for vehicles registered or principally garaged in this State. One such vehicle, a Ford Explorer, is listed in the policy. There is no requirement to provide UM coverage

for a borrowed, out-of-state vehicle that is neither garaged nor being operated in this state. *N.J.S.A.* 17:28–1.1; 17:28–1.4.

Jacobs testified that when Hurley began using the 4 Runner in California, he informed Coverage "that there was another vehicle that [defendant] would be driving and, therefore, to get coverage on that particular vehicle and to extend whatever coverage we had under the policies and see that that was taken care of."

Pursuant to Jacobs' request, Coverage obtained a new policy which contained in bold words "Added Hired Car and Drive other Car Coverages." The "Declarations" and premium pages of a new policy are critical to determining what coverage an insured can reasonably expect thereunder. *Lehrhoff v. Aetna Cas. and Sur. Co.*, 271 *N.J.Super.* 340, 638 *A.*2d 889 (App.Div.1994).

In this case, the "Declarations" clearly showed that, as distinct from liability coverage, UM coverage only extended to the 1993 Ford Explorer owned by the corporation. Similarly, item 4 of the "Declarations" made clear that only liability was covered under the "Drive Other Car" category. The Declarations also made clear that no premium was being charged and no coverage provided for UM, UIM or any other purpose with respect to the "Drive Other Car" addition. Moreover, the Declarations also showed that only $104 was being charged as additional premium for the "Drive Other Car" additional liability coverage.

As noted, a UM/UIM endorsement was annexed to the policy. Defendants argued below and contend here that inclusion of the UM/UIM endorsement in the new policy created an ambiguity because the endorsement's "boilerplate" language implied that UM coverage also extended to Hurley when driving the 4 Runner.

The motion judge disagreed, finding that, as the Hurleys never had any discussions with either the insurance broker or the insurance company itself, they could not have formed a reasonable expectation that UM coverage would extend to the borrowed 4 Runner. Essentially, Hurley relied upon his advisor, Jacobs, not the policy. The judge also reasoned that the specific language of

the Declarations clearly extended UM coverage only to the specified Ford Explorer vehicle listed in the UM section of the Declarations. We agree.

The policy, in relevant part, included the following provisions:

BUSINESS AUTO POLICY

PART I WORDS AND PHRASES WITH SPECIAL MEANING—READ THEM CAREFULLY

A. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

F. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

The UM endorsement is found several pages later with the heading, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement defines "family member" and in part D list "WHO IS INSURED".

1. You or any family member

2. Anyone else occupying a covered auto or a temporary substitute for a covered auto.

Defendants argue on appeal that because the named insured is a corporate person, UM coverage must necessarily extend to each of the individuals referenced in the policy, because "family member" is included in the definition of "who is insured". Essentially, defendants urge that if Hurley was an "insured" under any provision of the policy, he must be deemed insured under all of its coverages.

It is well settled law that when a policy is unclear, an ambiguity is resolved in favor of the insured, *Cobra Prods., Inc. v. Federal Ins. Co.*, 317 *N.J.Super.* 392, 400, 722 *A.*2d 545 (App.Div.1998), *certif. denied*, 160 *N.J.* 89, 733 *A.*2d 494 (1999), and that the "fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the *parties.*" (emphasis provided). *Werner Indus., Inc. v. First State Ins. Co.*, 112 *N.J.* 30, 35–36, 548 *A.*2d 188 (1988).

■ Here, the motion judge noted that Hurley was not even aware of what was in the policy. Moreover, Hurley understood the policy was to protect him against liability. As noted above, the Declarations clearly indicate that there was no UM coverage except when driving the car insured for that coverage, and that no premiums were charged, except for liability, with respect to the Drive Other Car coverage. In *Lehrhoff, supra,* at 347, 638 A.2d 889, we held that the reasonable expectations provided by the declaration page "cannot be contradicted by the policy's boiler-plate unless the declaration page itself clearly so warns the insured." We stated,

> A personal automobile insurance policy is a bulky document, arcane and abstruse in the extreme to the uninitiated, unversed and, therefore, typical policyholder. We are persuaded, therefore, that a conscientious policyholder, upon receiving the policy, would likely examine the declaration page to assure himself that the coverages and their amounts, the identity of the insured vehicle, and the other basic information appearing thereon are accurate and in accord with his under-standing of what he is purchasing. We deem it unlikely that once having done so, the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, and requalified meanings.

*Id.* at 346–47, 638 A.2d 889. Based on the "Business Auto Policy" Declarations and Hurley's deposition testimony, we concur with the motion judge that there could have been no "reasonable expectation" of UM coverage for the 4 Runner.

We also find persuasive plaintiff's argument that this was a policy which could not have been written directly for Hurley, who was neither licensed in, nor a resident of, New Jersey, and who had a bad driving record to boot. This was a CAIP policy, a corporate business policy, not solicited by or on behalf of plaintiff, but imposed upon it by operation of law primarily as a means to protect the driving public by providing an auto liability insurance market for otherwise unplaceable corporate risks. Hurley here seeks to exploit that salutary legislative effort by engrafting into it judicial doctrines designed to protect unsophisticated individual insurance buyers. Here, a closely held corporation employed sophisticated representatives to secure its insurance coverage and it received what it purchased.

The judgment rendered is consistent both with existing law and sound policy. We affirm.