765 A.2d 195

PROGRESSIVE CASUALTY INSURANCE COMPANY, AN INSURANCE CARRIER, PLAINTIFF–RESPONDENT, v. ROBERT MATHEW HURLEY AND DEVIL ELEVEN, INC., A NEW JERSEY CORPORATION, DEFENDANTS AND THIRD PARTY PLAINTIFFS–APPELLANTS, v. COVERAGE CONSULTANTS, INC., A NEW YORK CORPORATION, THIRD PARTY DEFENDANT–RESPONDENT, AND JASON JACOBS, FOURTH PARTY–DEFENDANT.

Argued November 27, 2000—Decided January 29, 2001.

*John P. Nulty, Jr.,* argued the cause for appellants (*Boffa, Shaljian, Cammarata & O'Connor,* attorneys).

*Marc L. Dembling,* argued the cause for respondent Progressive Casualty Insurance Company (*Berlin, Kaplan, Dembling & Burke,* attorneys).

*Anthony J. Accardi,* argued the cause for respondent Coverage Consultants, Inc. (*Litvak, Accardi & Trifiolis,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal concerns the scope of coverage provided by an uninsured/underinsured motorist endorsement of a business automobile insurance policy issued to a corporation. The specific issue is whether petitioner Robert Hurley (Hurley), the sole owner of Devil Eleven, Inc. (Devil Eleven), the named insured, is entitled to uninsured motorist (UM) benefits on the basis that the uninsured/underinsured endorsement of the policy expressly provides coverage for "any family member of the insured."

I

On December 12, 1993, Hurley was involved in a motor vehicle accident in Sacramento, California with an uninsured motorist. *Progressive Cas. Ins. Co. v. Hurley,* 327 *N.J.Super.* 179, 181, 742 *A.*2d 1013 (App.Div.2000). At the time of the accident, he resided in Sacramento, California where he played professional basketball with the Sacramento Kings. *Id.* at 181, 742 *A.*2d 1013. Hurley was driving a Toyota 4 Runner loaned to him, presumably for promotional purposes, by the Folsom Lake Toyota dealership. *Ibid.* The 1994 Toyota 4 Runner was owned by Folsom Lake Toyota and Hurley received $60,000 in UM benefits under Folsom Lake's insurance policy. *Ibid.*

When Hurley started his professional basketball career prior to moving to California, he hired a financial advisor, Jason Jacobs, who was responsible for Hurley's personal business affairs, including insurance. In 1993, Devil Eleven, a New Jersey corporation, was formed on Jacobs' recommendation primarily for tax pur-

poses. Hurley and his mother, Christine Hurley, were the sole officers of the corporation. When Devil Eleven was formed, Hurley owned a 1993 Ford Explorer. Jacobs requested that Jim Cullinan, the president and sole stockholder of Coverage Consultants, Inc. (Coverage Consultants), find the "best coverage available" for the 1993 Ford Explorer. The insurance application submitted to Coverage Consultants was a Commercial Trucker Application pursuant to the New Jersey Automobile Insurance Plan. The application stated that the applicant was Devil Eleven, the specified vehicle was the 1993 Ford Explorer and the named automobile operators were Robert M. Hurley and Christine Hurley. At the time the initial auto insurance policy was obtained, it was necessary for Coverage Consultants to procure automobile insurance through New Jersey's Commercial Automobile Insurance Plan (CAIP) because Hurley then was living in North Carolina, had a North Carolina driver's license, and his motor vehicle abstract revealed speeding and other moving violations. *Id.* at 182, 742 *A.*2d 1013. We note that CAIP was established pursuant to *N.J.S.A.* 17:29D–1 "for the providing and apportionment of insurance coverage for applicants thereof who are in good faith entitled to, but are unable to procure the same, through the ordinary methods." *Ibid.*

Based on that application, Progressive Casualty Insurance Company, Inc. (Progressive) issued a Business Auto Insurance Policy and sent the policy directly to Devil Eleven. However, after the policy was mailed to Devil Eleven at the Hurley's home address, it was returned to Progressive as undeliverable. Progressive contacted Coverage Consultants, and Cullinan, Jr. requested that "c/o Hurley" be inserted next to the address in order that the policy would be delivered to Christine Hurley. The Declarations page of the 1993 Business Auto Insurance Policy, which was the policy in effect when the accident in California occurred, listed as the named insured "Devil Eleven, Inc." Under "ITEM FOUR," the vehicle listed as a covered auto is a "93 FORD EXPLORER 4 DOOR." "ITEM THREE" describes the symbols used to specify which autos are covered under the policy. The symbol "7" is

defined as follows: "SPECIFICALLY DESCRIBED AUTOS. Only those autos described in ITEM FOUR for which a premium charge is shown (and for liability coverage any trailers you don't own while attached to any power unit described in ITEM FOUR)." The symbol "8" is defined as "HIRED AUTOS ONLY. Only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire or borrow from any of your employees or members of their households." Finally, the symbol "9" is defined as "NONOWNED AUTOS ONLY. Only those autos you own, lease, hire or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs."

Under "ITEM TWO—SCHEDULE OF COVERAGES AND COVERED AUTOS," the declarations page lists in the first column the "COVERAGES" and the second column refers to "COVERED AUTOS." Under "COVERAGES," the policy lists "UNINSURED MOTORISTS INSURANCE" and under the covered autos column, only the symbol "7" is designated.

Part I   of the policy includes the following provisions:
PART I WORDS AND PHRASES WITH SPECIAL MEANING—READ THEM CAREFULLY

A. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

. . .

F. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

The UM endorsement is found several pages later with the heading, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement defines family member as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." Part D of the UM endorsement states as follows: "WHO IS INSURED. 1. You or any family member. 2. Anyone else occupying a covered auto or a temporary substitute for a

covered auto." Jerome Iwler, litigation manager for the motor carrier division at Progressive explained in his deposition that that endorsement is an Insurance Service Organization endorsement, mandated by the New Jersey Automobile Insurance Plan. He further stated that because the named insured was Devil Eleven, no one would be entitled to coverage under part D, subsection 1 of the UM endorsement. In 1994, the business automobile insurance policy's UM endorsement issued by Progressive to Devil Eleven was amended. Specifically, the language in Part D of the UM endorsement was changed in 1994 to "WHO IS INSURED. 1. You. 2. *If you are an individual,* any family member." (Emphasis added).

After Hurley went to California to play for the Sacramento Kings, his agent, Michael Higgins, obtained a car for his use through a Toyota dealership. Christine informed Jacobs that Hurley would be using that car. Jacobs testified that when Hurley began using the 4 Runner in California, in or about October 1993, he called Cullinan, Jr. and told him that "there was another vehicle that [Hurley] would be driving and, therefore, to get coverage on that particular vehicle and to extend whatever coverage we had under the policies...." Cullinan, Jr. testified that he told Jacobs that "if the car is not owned by Mr. Hurley it could not be added onto our policy." Cullinan, Jr. also informed Jacobs that he should make sure that "the car was insured properly by Folsom Toyota." Jacobs testified that he did not remember what Coverage Consultants told him in response to his request. Cullinan, Jr. contacted Progressive and spoke to Ms. Jan Edbaugh, explaining the situation and asking for advice. Ms. Edbaugh recommended that Cullinan, Jr. add "hired car" coverage and "drive other car" coverage. After Cullinan, Jr. told Jacobs what Progressive had suggested, Jacobs requested that Cullinan, Jr. add the "drive other car" coverage. Cullinan, Jr. asserted that he told Jacobs that the coverage would be only for liability and that Jacobs authorized him to proceed. On October 21, 1993 Cullinan, Jr. sent a letter to Progressive that read as follows: "Please add hired-car coverage for liability on an 'if-any'

basis, and "drive other car" coverage for $500,000 limit naming Robert M. Hurley and Christine A. Hurley." Iwler testified that a change was made to the policy whereby Robert Hurley and Christine Hurley were added as insureds under "drive other car" coverage. That the "drive other car" endorsement only enhanced the liability coverage and had no effect on UM coverage is undisputed.

Prior to the accident, Cullinan, Jr. never had any conversations with Jacobs or any of the Hurleys regarding UM coverage. Hurley testified at his deposition that, prior to the accident, he never saw the policy nor spoke with anyone from Coverage Consultants. Hurley also testified that Jacobs told him that "he had taken an insurance policy, as a blanket coverage for [him]self and the employees of Devil Eleven." Hurley understood that the policy was "to protect [him] in case if someone tried to sue [him] as a result of some kind of motor vehicle problem ..." and that his financial advisor took out the policy "as blanket coverage for [him]self to protect [him]self and the employees of Devil Eleven. That's really all I knew about the policy." *Progressive, supra,* 327 *N.J.Super.* at 182, 742 *A.*2d 1013.

With regard to Progressive's processing of the claims resulting from Hurley's accident, Iwler testified that the accident was reported on December 14, 1993. On January 21, 1994, Tom Bose, an adjuster from Progressive, sent a letter to Hurley notifying him that there were some first party coverages for the claim arising from his accident and indicating that there was liability coverage. Christine Hurley testified that after she received the January 21 letter, Jacobs must have contacted Progressive and inquired about UM coverage. Thereafter, Progressive instituted this action seeking a declaratory judgment that under Devil Eleven's commercial auto insurance policy Hurley was not entitled to UM coverage for the injuries he sustained in the automobile accident. *Id.* at 180–81, 742 *A.*2d 1013. Hurley and Devil Eleven counterclaimed seeking UM coverage for those injuries, *ibid.,* and also filed a third-party complaint against their broker, Coverage

Consultants, contending that if the policy did not provide UM coverage it was attributable to the broker's negligence. *Id.* at 181 n. 1, 742 *A.*2d 1013. Coverage Consultants filed a fourth-party complaint against Jacobs. The third and fourth party complaints have been resolved. *Ibid.*

The Law Division granted summary judgment in favor of Progressive on the basis that Hurley was not entitled to UM coverage under a commercial auto insurance policy issued in New Jersey by Progressive, for injuries sustained while driving a loaned motor vehicle involved in an automobile accident with an uninsured motorist in California. The Appellate Division affirmed the trial court's grant of summary judgment, concluding that Progressive was not required to provide UM coverage pursuant to *N.J.S.A.* 17:28–1.1 for a borrowed car neither registered nor principally garaged in New Jersey, and that the declarations page of the policy plainly indicated that UM coverage was not provided. *Id.* at 181, 742 *A.*2d 1013. The court specifically noted that item four of the "Declarations Page" made clear that only liability was covered under the "drive other car" category, and that no premium was charged and no coverage provided for UM, UIM or any other purpose with respect to the "drive other car" endorsement. *Ibid.* We granted certification. 163 *N.J.* 398, 749 *A.*2d 371 (2000).

II

A

New Jersey's courts have not yet addressed the specific issue of whether family oriented language in an auto insurance policy issued to a corporation renders the policy language ambiguous. Other jurisdictions, however, have confronted the question. The majority view among other jurisdictions is that business insurance policies extending coverage to family members are not ambiguous and therefore do not provide coverage for relatives or employees. For example, *Grain Dealers Mut. Ins. Co. v. McKee,* 943 *S.W.*2d 455 (Tex.1997), held that the daughter of a corporation's sole

shareholder was not entitled to insurance benefits under a commercial auto policy that stated that an insured included "you and any designated person and any family member of either" under the UM/UIM endorsement and "you or any family member" under the Personal Injury Protection (PIP) endorsement. *Id.* at 457. Similarly, *American States Ins. Co. v. C & G Contracting, Inc.*, 186 *Ariz.* 421, 924 *P.*2d 111 (Ct.App.1996) involved a policy in which the UIM endorsement provided that an insured included "you or any family member." *Id.* at 113. Noting that the Arizona Supreme Court has rejected the rule of construing ambiguous terms against the insurer, the court held that because a reasonably intelligent consumer should be aware that a corporation is a legal entity that can neither sustain bodily injury nor have a "family member," the business auto policy did not provide UM coverage to claimant. *Id.* at 114.

In *Foote v. Royal Ins. Co. of Am.*, 88 *Hawai'i* 122, 962 *P.*2d 1004 (Ct.App.1998), a policy's UIM endorsement provided that an insured included "you or any 'family member.'" *Id.* at 1005. The court held that the claimant was not entitled to UIM coverage because the terms of the policy were unambiguous, noting that "although the use of a 'family member' clause in a commercial automobile policy is troublesome, common sense dictates that a reasonable layperson should know that a corporation cannot have a 'family member.'" *Id.* at 1007–08. Likewise, in *Concrete Servs., Inc. v. U.S. Fidelity & Guar. Co.*, 331 *S.C.* 506, 498 *S.E.*2d 865 (S.C.1998), the UIM endorsement defined "insured" as "[y]ou, and if you are an individual, any 'family member.'" *Id.* at 867. The court held that the claimant was not entitled to coverage under the UIM provisions because the language in the endorsement was not ambiguous, and expressly excluded corporations from the entities whose family members would be covered. *Id.* at 867–68.

Other cases also have held that "family member" language in a business insurance policy does not create an ambiguity, and only the named insured is entitled to coverage. *See, e.g., Peterson v.*

*Universal Fire and Cas. Ins. Co.*, 572 *N.E.*2d 1309, 1311 (Ind.Ct. App.1991) (finding that officer of used car dealership who was named insured under garage insurance policy was not entitled to recover UIM benefits when he was injured while riding in friend's automobile on pleasure trip); *Valentine v. Bonneville Ins. Co.*, 691 *So.*2d 665 (La.1997) (finding that deputy sheriff injured during traffic stop was not named insured within meaning of business automobile insurance policy); *Herrera v. Mountain States Mut. Cas. Co.*, 115 *N.M.* 57, 846 *P.*2d 1066 (1993) (finding insured's employee's daughter was not covered under policy covering insured's business vehicles because employee was not named insured); *Sproles v. Greene*, 329 *N.C.* 603, 407 *S.E.*2d 497 (1991) (finding that employees were not covered under corporate employer's UIM coverage); *Meyer v. American Econ. Ins.*, 103 *Or.App.* 160, 796 *P.*2d 1223 (1990) (finding that UIM policy did not cover officer of insured corporation who was injured by uninsured motorist while riding his bicycle for personal reasons).

The minority view holds that business insurance policies that extend coverage to family members are ambiguous and thus coverage should be granted to relatives and employees of the corporation. In *O'Hanlon v. Hartford Acc. & Indem. Co.*, 639 *F.*2d 1019 (3d Cir.1981), *on remand to,* 522 *F.Supp.* 332 (D.Del. 1981), *aff'd,* 681 *F.*2d 806 (3d Cir.1982), *aff'd,* 681 *F.*2d 807 (3d Cir.1982), the UM endorsement defined "Persons Insured," in part, as "the Named Insured . . . and, while residents of the same household, the spouse and relatives of [the named insured]." *Id.* at 1023. Although the policy designated the plaintiff's trade-name as the named insured, the court held that the plaintiff was the named insured under the UM endorsement and plaintiff's son was entitled to UM benefits. *Id.* at 1024. The court viewed the trade-name as the alter-ego of the natural person. *Ibid.* The court also observed that the application for the policy specified that the insured was an individual and that the UM endorsement read as though it were designed for use with a policy that insured a natural person. *Ibid.* Similarly, in *Lunge v. National Cas. Co.*, 977 *F.Supp.* 672 (D.Vt.1997), a corporate business automobile

insurance policy's UM endorsement contained language that defined the "named insured" as "you" and "if you are an individual, any family member." *Id.* at 674. The court found the policy language to be ambiguous relying in part on other "family oriented" language in the policy. *Id.* at 677.

*Hawkeye–Security Ins. Co. v. Lambrecht & Sons, Inc.*, 852 *P.*2d 1317 (Colo.Ct.App.1993) involved a small, closely-held corporation whose UM policy provided coverage for "family members" and defined "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." *Id.* at 1318. The court held that the claimant, as a "family member" of the corporation, was entitled to UM coverage. *Ibid.* The court noted that the corporation was a small closely-held family business enterprise and that the claimant herself was an active officer of the corporation as well as one of the designated drivers listed on the insurance application. *Ibid.* In *Ceci v. National Indem. Co.*, 225 *Conn.* 165, 622 *A.*2d 545 (Conn.1993), a business auto policy identified as the named insured the claimant's corporate employer, and the UIM provisions stated that individuals covered included "you or any family member." *Id.* at 546. The court held that the claimant was entitled to UIM benefits because "[b]y inserting a family member provision in a business policy, the defendant ... left the [plaintiffs] in the ... position of having to divine the meaning and purpose of the family member language in the context of the policy." *Id.* at 550. The court considered it critical that the agent that sold the policy had considerable information about the family ties to the corporation, including the fact that all the listed drivers were family members, and that the insured vehicles were kept at the address where the business was located and where the family employees, including the owner, resided. *Ibid.* The court also expressed the view that because the named insured was a corporation, language relating to insuring family members could have been omitted to avoid any ambiguity. *Id.* at 549–50.

Lastly, in *Nationwide Mut. Ins. Co. v. Barre*, 1996 *WL* 745842, No. CV–960133503, (Conn.Super.1996), an insurance policy provided UM coverage to "you or any family member." *Id.* at *2. The court held that, construing the UM endorsement from the standpoint of the reasonable layperson, it was clear that all members of the claimant's family were covered. *Id.* at *6. Other courts also have held that the incorporation of family member language in business insurance policies render the language ambiguous and warrant coverage to family members. *See, e.g., Hager v. American W. Ins. Co.*, 732 *F.Supp.* 1072, 1074 (D.Mont.1989) (recognizing "the generally accepted principle that the uninsured motorist coverage of an insurance policy may not limit the class of persons covered under the endorsement to a group smaller than that covered under the liability provisions of the same policy"); *King v. Nationwide Ins. Co.*, 35 *Ohio St.*3d 208, 519 *N.E.*2d 1380, 1384 (1988) (finding that UIM coverage applying to "relatives living in your household" in a business auto policy was ambiguous and worker was entitled to employer's UIM coverage).

## B

New Jersey courts consistently have recognized that insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation. *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990); *Meier v. New Jersey Life Ins. Co.*, 101 *N.J.* 597, 611–12, 503 *A.*2d 862 (1986). We have noted that an insurance company is "expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices." *Allen v. Metropolitan Life Ins. Co.*, 44 *N.J.* 294, 305, 208 *A.*2d 638 (1965). Thus, when called on to interpret insurance policies, we "assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992). An insurance policy generally should be interpreted according to its plain and ordinary

meaning. *Longobardi, supra,* 121 *N.J.* at 537, 582 *A.*2d 1257. We also have stated, however, that "policies should be construed liberally in [the insured's] favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.' " *Kievit v. Loyal Protective Life Ins. Co.,* 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961) (quoting *Danek v. Hommer,* 28 *N.J.Super.* 68, 76, 100 *A.*2d 198 (App.Div.1953), *aff'd,* 15 *N.J.* 573, 105 *A.*2d 677 (1954)).

■ We have held that, in the absence of an ambiguity in the language of an insurance policy, a court should not engage in a strained construction to support the imposition of liability. *Brynildsen v. Ambassador Ins. Co.,* 113 *N.J.Super.* 514, 518, 274 *A.*2d 327 (Law Div.1971); *see also Weedo v. Stone–E–Brick, Inc.,* 81 *N.J.* 233, 247, 405 *A.*2d 788 (1979) (stating that ambiguity is genuine if "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage"). In the absence of any ambiguity, courts "should not write for the insured a better policy of insurance than the one purchased." *Longobardi, supra,* 121 *N.J.* at 537, 582 *A.*2d 1257 (quoting *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.,* 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989)); *see also Kampf v. Franklin Life Ins. Co.,* 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960) ("When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties.").

■ However, when a policy is unclear ambiguities ordinarily are resolved in favor of the insured. *Cruz–Mendez v. ISU/Ins. Servs.,* 156 *N.J.* 556, 571, 722 *A.*2d 515 (1999); *Doto v. Russo,* 140 *N.J.* 544, 556, 659 *A.*2d 1371 (1995); *Hunt v. Hospital Serv. Plan of New Jersey,* 33 *N.J.* 98, 102, 162 *A.*2d 561 (1960). We have observed that "[w]here the policy language [of an insurance policy] supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied." *Lundy v. Aetna Cas. & Sur. Co.,* 92 *N.J.* 550, 559, 458 *A.*2d 106 (1983). Nevertheless, only genuine interpretational difficulties will implicate the doctrine that requires ambiguities to be

construed favorably to the insured. *American White Cross v. Continental Ins. Co.,* 202 *N.J.Super.* 372, 381, 495 *A.*2d 152 (App.Div.1985). A "genuine ambiguity" arises only "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Weedo,* 81 *N.J.* at 247, 405 *A.*2d 788. When construing an ambiguous clause in an insurance policy, courts should consider whether clearer draftsmanship by the insurer "would have put the matter beyond reasonable question." *Doto, supra,* 140 *N.J.* at 557, 659 *A.*2d 1371 (quoting *Mazzilli v. Accident & Cas. Ins. Co.,* 35 *N.J.* 1, 7, 170 *A.*2d 800 (1961)); *see also Kook v. American Sur. Co.,* 88 *N.J.Super.* 43, 51, 210 *A.*2d 633 (App.Div.1965) ("[C]onsideration should be given [about] whether alternative or more precise language, if used, would have put the matter beyond reasonable question.").

It also is well established that an automobile insurance policy should be construed to comport with the insured's reasonable expectations of coverage. *Gibson v. Callaghan,* 158 *N.J.* 662, 669–71, 730 *A.*2d 1278 (1999); *American Motorists Ins. Co. v. L–C–A Sales Co.,* 155 *N.J.* 29, 41, 713 *A.*2d 1007 (1998); *Doto, supra,* 140 *N.J.* at 555–57, 659 *A.*2d 1371; *Aubrey v. Harleysville Ins. Cos.,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995). The "fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties." *Werner Indus., Inc. v. First State Ins. Co.,* 112 *N.J.* 30, 35–36, 548 *A.*2d 188 (1988). Courts will enforce only the restrictions and the terms in an insurance contract that are consistent with the objectively reasonable expectations of the average insured. *Di Orio v. New Jersey Mfrs. Ins. Co.,* 79 *N.J.* 257, 269, 398 *A.*2d 1274 (1979). We have adopted the principle giving effect to the "objectively reasonable expectations" of the insured for the purpose of rendering a "fair interpretation" of the boundaries of insurance coverage. *Allen, supra,* 44 *N.J.* at 305, 208 *A.*2d 638; *Kievit, supra,* 34 *N.J.* at 482–83, 170 *A.*2d 22.

Progressive and the Appellate Division rely on *Giambri v. Government Employees Ins.,* 170 *N.J.Super.* 140, 405 *A.*2d 872 (Law Div.1979), holding that an automobile liability insurance

policy issued to a family-held corporation does not provide PIP coverage to family members "as members of the family of the named insured" under *N.J.S.A.* 39:6A. That case, however, did not involve the interpretation of ambiguous language drafted by an insurance company. Instead, *Giambri* addressed the interpretation of a statute mandating PIP coverage and the family oriented language appeared in the statute rather than in the insurance policy. *Id.* at 143, 405 *A.*2d 872.

Progressive and the Appellate Division also rely on *Lehrhoff v. Aetna Cas. & Sur. Co.,* 271 *N.J.Super.* 340, 638 *A.*2d 889 (App.Div. 1994), which held that ordinarily a policy's declarations page should be deemed to define coverage and the insured's expectations. *Id.* at 347, 638 *A.*2d 889. In that case, plaintiff was designated as a driver in an insurance policy that insured his father's automobile and provided UM and UIM coverage. *Id.* at 342, 638 *A.*2d 889. Plaintiff was injured in an accident with an unidentified motorist and claimed benefits under the policy. *Ibid.* The insurer denied the claim because plaintiff did not reside with his father and the policy defined a family member as "a person related to you by blood, marriage or adoption who is a resident of your household." *Id.* at 345, 638 *A.*2d 889. The Appellate Division held that boilerplate exclusions could not be used to defeat coverage that was provided by the express terms of the declarations page. *Id.* at 347, 638 *A.*2d 889.

## III

With those principles in mind, we turn to the governing language in Hurley's policy. Progressive argues that coverage should be denied because the declarations page of Progressive's policy clearly indicates that UM coverage is for specified vehicles only. Hurley claims that the declarations page does not purport to define the scope of UM coverage, and that a reasonable construction of the UM endorsement supports the conclusion that Hurley is entitled to UM coverage. Specifically, Hurley argues that the language in the UM/UIM endorsement stating that

underinsured/uninsured coverage is provided to "1. You or any family member," created an ambiguity because "you" refers to the named insured, Devil Eleven, and a corporation can not have family members.

In our view, several factors support the conclusion that we should follow the minority view set forth in *Ceci, supra,* 622 A.2d at 545. First, Devil Eleven is the kind of small, closely-held family corporation that other courts have identified with family members for purposes of interpreting UM/UIM clauses in insurance policies. Devil Eleven was formed, on the recommendation of Jacobs, for tax purposes. Hurley and his mother were designated officers of the corporation, and the employees of Devil Eleven were Hurley, Christine Hurley, and Brian Hurley (Hurley's uncle). Significantly, Hurley and his mother were the designated drivers under the Progressive policy. When Progressive sent the policy directly to Devil Eleven, at the Hurley's address, it was returned to Progressive as undeliverable. Progressive contacted Cullinan, Jr. and he requested that "c/o Hurley" be inserted next to the address so that the correspondence would get to Christine Hurley. From those facts Progressive reasonably could have inferred that Devil Eleven was a closely-held corporation owned solely by members of the Hurley family, and that its mailing address was the same as that of members of the Hurley family.

In addition, the UM endorsement reads as though it were designed to be used by a natural person. *O'Hanlon, supra,* 639 F.2d at 1023. For example, the use of the word "you" conveys the common sense notion that it refers to a person. The definition of "family member" as "a person related to you by blood, marriage or adoption who is resident of your household, including a ward or foster child," also suggests that the UM endorsement was designed to provide coverage for natural persons who are related by blood, marriage, or adoption. Also, because Devil Eleven had only two corporate officers, Hurley and his mother, and they were both listed drivers under the policy, it is reasonable to assume that the

main purpose of the policy was to insure members of the family involved in the business. *Hawkeye–Security, supra,* 852 *P.*2d 1317. Lastly, Progressive could have omitted the "family member" language in section D.1. of the UM endorsement of the auto policy to avoid any ambiguity. *Ceci, supra,* 622 *A.*2d at 545–46. Accordingly, we agree with the view of the minority of jurisdictions that have afforded UM/UIM coverage where insurance policies issued to corporations include family oriented language that creates an ambiguity.

Regarding the cases relied on by Progressive and the Appellate Division, we note that to apply the rationale underlying *Giambri, supra,* 170 *N.J.Super.* 140, 405 *A.*2d 872, which addressed the interpretation of a statute mandating PIP coverage, would be contrary to our longstanding policy of interpreting ambiguities in insurance policies in favor of the insured. Moreover, the ambiguous language at issue in *Lehrhoff, supra,* 271 *N.J.Super.* at 340, 638 *A.*2d 889, was drafted by the legislature and not by an insurance company. To rely on *Lehrhoff, supra,* as supporting a determination of coverage exclusively on the basis of Progressive's policy declarations page also would be inconsistent with our precedents because that page provided no information concerning the individuals that could benefit from UM coverage and does not resolve the alleged ambiguity in the UM endorsement.

We find that the meaning of the phrase "[y]ou or any family member" in the UM endorsement of Progressive's business automobile policy is readily susceptible of several interpretations. One is that the word "you" refers to Devil Eleven and that "family members" refers to the listed drivers on the policy. Another is that "you" refers to the listed drivers and that "family members" refers to family members of the listed drivers. The third interpretation is that, because the named insured is Devil Eleven and a corporation cannot have family members, the provision in D.1. of the UM endorsement is inapplicable and no one is entitled to coverage. Because some of those interpretations are "favorable to the insurer and the other[s] to the insured, the interpretation

favoring coverage should be applied." *Lundy, supra,* 92 *N.J.* at 559, 458 *A.*2d 106. We are convinced that the phrasing of the family language in this UM endorsement was "so confusing that the average policyholder cannot make out the boundaries of coverage." *Weedo, supra,* 81 *N.J.* at. 247, 405 *A.*2d 788. We conclude that the language in Progressive's business automobile insurance policy specifying that "[y]ou and any family member" are insured under a ·UM endorsement creates an ambiguity that must be interpreted in favor of the insured. *Cruz–Mendez, supra,* 156 *N.J.* at 571, 722 *A.*2d 515 (stating that "[w]ith insurance policies, ambiguous contractual language is construed in favor of the insured and against the insurer") (citations omitted).

Consistent with that principle, we also interpret Progressive's policy "to accord with the objectively reasonable expectations of the insured." *Doto, supra,* 140 *N.J.* at 556, 659 *A.*2d 1371. Under the reasonable expectations doctrine "an objectively reasonable interpretation of the average policyholder is accepted so far as the language of the insurance contract in question will permit." *Di Orio, supra,* 79 *N.J.* at 269, 398 *A.*2d 1274 (citations omitted). The family oriented language in the UM endorsement of Progressive's policy insuring Hurley's corporation and the designation of the Hurleys as the designated drivers support the conclusion that the average policyholder reasonably could have expected that the designated drivers were personally entitled to UM benefits.

We note that Progressive could have clarified or omitted the family member language to provide notice to the Hurleys of the precise nature of the UM/UIM coverage that was being purchased. *Doto, supra,* 140 *N.J.* at 557, 659 *A.*2d 1371 (considering whether "more precise language by the insurer, if chosen, 'would have put the matter beyond reasonable question' "). Moreover, in 1994 Part D. of the UM endorsement issued by Progressive to Devil Eleven was changed to state: "WHO IS INSURED. 1. You. 2. *If you are an individual,* any family member." (Emphasis added). That change occurred right after the decision in *Ceci, supra,* 622 *A.*2d at 545, and weighs against Progressive's argu-

ment that there was no interpretational problem inherent in the family member language in the 1993 UM endorsement. As noted, *Ceci, supra*, 622 *A*.2d at 545, a UM endorsement substantially similar to the one appended to the 1993 policy was declared to be ambiguous and was interpreted in favor of the insured by the Connecticut Supreme Court. *Id.* at 550. Thus, obviously Progressive made the change in the UM endorsement to avoid possible challenges based on *Ceci*, and the change demonstrated convincingly that better and more specific language could have been included in the 1993 policy.

Finally, we note that Progressive, which unilaterally creates varied and complex insurance policies, is in a much better position to prevent mistakes or ambiguities in the policies that it writes. *Allen, supra*, 44 *N.J.* at 305, 208 *A*.2d 638 (stating that "[an insurance] company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices"). As this case demonstrates, UM endorsements containing family member language should not be appended to business automobile insurance policies because policyholders are left to speculate about their meaning and purpose.

### IV

We reverse the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with this opinion.

For reversal and remandment—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.