**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1826-21

ROCKLEIGH COUNTRY
CLUB, LLC,

     Plaintiff-Appellant,

v.

HARTFORD INSURANCE
GROUP a/k/a THE HARTFORD
d/b/a HARTFORD FIRE
INSURANCE COMPANY,
STRATEGIC INSURANCE
PARTNERS, INC., PHILIP D.
MURPHY, in his capacity as
Governor of the State of New Jersey,
and STATE OF NEW JERSEY,

     Defendants -Respondents.

_____

Argued May 9, 2022 – Decided June 21, 2022

Before Judges Sumners and Vernoia.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Bergen County,
Docket No. L-4013-20.

Gary S. Newman argued the cause for appellant (Newman & Denburg, LLC, attorneys; Gary S. Newman, of counsel and on the brief; David F. Scheidel II, on the brief).

Jonathan M. Freiman (Wiggin and Dana, LLP) of the Connecticut bar, admitted pro hac vice, argued the cause for respondents Hartford Insurance Group (Steptoe & Johnson, LLP, Jonathan M. Freiman, Sarah D. Gordon (Wiggin and Dana, LLP) of the Virginia bar, admitted pro hac vice, and Anjali S. Dalal, (Wiggin and Dana, LLP) of the New York bar, admitted pro hac vice, attorneys; James L. Brochin, Jonathan M. Freiman, Sarah D. Gordon and Anjali S. Dalal, on the brief).

Carl A. Salisbury argued the cause for amicus curiae United Policyholders (Bramnick, Rodriguez, Grabas, Arnold & Mangan, attorneys; Carl A. Salisbury, on the brief).

PER CURIAM

Plaintiff Rockleigh Country Club, LLC, owns and operates a facility that conducts "pre-contracted for and pre-planned social events [such as] weddings." In March 2020, Governor Philip D. Murphy issued Executive Order 107 (EO 107) in response to the COVID-19 pandemic. Exec. Order No. 107 (Mar. 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020). In pertinent part, EO 107 "cancelled" "[g]atherings of individuals, such as parties, celebrations, or other social events," required the closure of "[t]he brick-and-mortar premises of all non-essential retail businesses," and mandated the closure of "[a]ll recreational and

A-1826-21

entertainment business." In accordance with EO 107, plaintiff closed its venue pending further orders from the Governor.

Plaintiff submitted a claim to defendant Hartford Insurance Company for business interruption coverage under a one-year Special Multi-Flex Business Insurance Policy (the policy) defendant issued to plaintiff on March 1, 2020. Plaintiff sought coverage for business losses and expenses it incurred due to the closure of its facility in response to EO 107's requirements and restrictions. Defendant denied plaintiff's claim.

Plaintiff filed a complaint against defendant seeking damages, a declaratory judgment and asserted fourteen causes of action, including breach of contract, breach of the covenant of good faith and fair dealing, bad faith, fraud, and others. Plaintiff also asserted causes of action, not relevant to this appeal, against its insurance broker, defendant Strategic Insurance Partners, Inc., and Governor Murphy.

By leave granted, plaintiff appeals from an order granting defendant summary judgment on thirteen of the asserted claims, all of which are founded on the contention defendant wrongfully denied coverage under the policy for business losses plaintiff sustained, and expenses plaintiff incurred, as a result of

the closure of its business pursuant to EO 107.[1] Plaintiff also appeals from an order denying its motion for summary judgment on three counts of its complaint.[2]

Defendant offers the following arguments for our consideration:

POINT I

THE APPELLATE STANDARD OF REVIEW.

A. A grant or denial of summary judgment is reviewed de novo.

B. Insurance ambiguity is always interpreted in favor of the insured.

POINT II

THE LOSSES STEMMING FROM GOVERNOR MURPHY'S EOS ARE A COVERED CAUSE OF LOSS.

A. Long standing New Jersey precedent mandates coverage for loss of use and function.

---

[1] Plaintiff's complaint included fourteen separate counts asserting causes of action against defendant. Defendant moved for summary judgment on thirteen of the causes of action—those asserted in counts one through ten and eleven through fourteen. Defendant did not move for summary judgment on count eleven, which remains pending before the trial court.

[2] Plaintiff sought summary judgment on counts: one, which sought a declaratory judgment on plaintiff's business interruption coverage claim; two, which alleged breach of contract; and five, which sought a declaratory judgment on plaintiff's extra expense coverage claim.

B. The terms "direct physical loss of" and "direct physical damage to" must be interpreted to provide [plaintiff] coverage for its loss of function to effectuate the reasonable expectations of the insured.

## POINT III

THE COURT BELOW ALSO ERRED BY FINDING NO COVERAGE UNDER THE "CIVIL AUTHORITY" POLICY PROVISIONS.

## POINT IV

THE COURT BELOW ERRED BY RULING THAT "LOSS OF FUNCTION" IS NOT THE EQUIVALENT OF "DIRECT PHYSICAL DAMAGE" OR "DIRECT PHYSICAL LOSS" VIOLATING [PLAINTFF]'S REASONABLE EXPECTATIONS OF COVERAGE.

## POINT V

STATE LAW MANDATES COVERAGE[] FOR PLAINTIFF[] FOR LOSSES DUE TO GOVERNOR MURPHY'S "SHUTDOWN ORDER" C[AU]SING COMPLETE LOSS OF FUNCTION[.]

A. Policy Exclusions are narrowly construed to provide coverage whenever possible.

B. "Virus" is NOT the cause of loss as there was NEITHER "virus" AT the premises NOR has Hartford demonstrated that it can be used as a sword to thwart coverage.

C. Alternatively, application of the "Virus Exclusion" DOES NOT apply because the cause for the Executive Orders of Governor Murphy CANNOT exclude coverage for an emergency situation which did not exist

5

at the Plaintiff[]'s premises and is well beyond the scope of the "virus exclusion[.]"

Unpersuaded by plaintiff's arguments, we affirm.

"We review de novo [a] grant of summary judgment." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Similarly, where, as here, a motion court's "decision . . . turns on its construction of a contract, appellate review of that determination is de novo." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)).

In determining the meaning of an insurance policy provision, a court must "first look to the plain meaning of the language at issue." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017). The parties' agreement must be "enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). Thus, in the absence of a specific definition in a policy, a word or term "must be interpreted in accordance with [its] ordinary, plain and usual meaning." Daus v. Marble, 270 N.J. Super. 241, 251 (App. Div.

6

1994).  A court "should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased."  Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-73 (2001)).  Thus, if there is no ambiguity in a policy's terms, those terms should be enforced "as written."  Zacarias v. Allstate Ins. Co., 168 N.J. 590, 597 (2001).

Alternatively, if a policy's language is ambiguous, a court may utilize rules of construction beyond the four corners of the contract.  Oxford Realty, 229 N.J. at 207.  Courts usually "construe insurance contract ambiguities in favor of the insured via the doctrine of contra proferentem."  Id. at 208.  This allows for consideration of "the vast differences in the bargaining positions between an insured and an insurance company in the drafting of an insurance policy," therefore permitting interpretation of a contract against the drafter.  Villa v. Short, 195 N.J. 15, 23 (2008).  Moreover, a court may consider the insured's "reasonable expectations."  Oxford Realty, 229 N.J. at 208.  More particularly, if the policy's language "fairly supports two meanings, one that favors the insurer and the other that favors the insured, the policy should be construed to sustain coverage."  President v. Jenkins, 180 N.J. 550, 563 (2004).

A court must "read the policy in favor of the insured" if there is a "genuine ambiguity" in the contract, meaning that "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg, 224 N.J. 189, 200 (2016) (quoting Progressive, 166 N.J. at 274). Policy terms, like those in the policy we are required to consider on appeal here, are "not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." Powell v. Alemaz, Inc., 335 N.J. Super. 33, 44 (App. Div. 2000).

Because resolution of plaintiff's arguments on appeal is dependent on the proper interpretation of the policy, we first summarize its pertinent provisions. The policy includes a "PROPERTY CHOICE COVERAGE FORM[,]" defining the terms and conditions of the coverage to which plaintiff claims entitlement. Under the section entitled "COVERAGE," plaintiff is afforded coverage where it suffers a "direct physical loss of or direct physical damage to . . . Covered Property caused by or resulting from a Covered Cause of Loss." The policy defines "Covered Cause of Loss" as a "direct physical loss or direct physical damage . . . unless the loss or damage is excluded or limited." It also defines "Covered Property" as plaintiff's buildings or structures, and business or

personal property including fixtures and furniture.  Thus, the policy provides coverage for losses resulting from the "direct physical loss of or direct physical damage" to plaintiff's event facility, as long as the cause of that loss is not otherwise specifically excluded.

The policy also provides coverage under defined circumstances for loss of business income and extra expense suffered because of "direct physical loss of or direct physical damage to" plaintiff's property "caused by or resulting from a Covered Cause of Loss."  More specifically, in a section entitled "PROPERTY CHOICE – BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM," the policy provides "business interruption" coverage

> for the actual loss of [b]usiness [i]ncome [plaintiff] sustain[s] and the actual, necessary[,] and reasonable [e]xtra [e]xpense [plaintiff] incur[s] due to the necessary interruption of [plaintiff's] business operations during the Period of Restoration <u>due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss</u> at "Scheduled Premises[.]"

> [(Emphasis added).]

The policy further includes "Civil Authority" coverage for business interruption losses for "the actual loss of [b]usiness [i]ncome" or an "actual, necessary and reasonable [e]xtra [e]xpense" incurred when "access to [plaintiff's] '[s]cheduled [p]remises' is specifically prohibited by order of a civil

9

authority <u>as the direct result of a Covered Cause of Loss to property in the immediate area</u>."  (Emphasis added).

The policy also includes express exclusions from coverage, including the provision plaintiff refers to as the virus exclusion.[3]  The exclusion provision states defendant "will not pay for loss or damage caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread or any activity of 'fungus,' wet rot, dry rot, bacteria or virus."  The policy also provides that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage."  Furthermore, the virus exclusion applies "whether or not the loss event results in widespread damage or affects a substantial area."[4]

---

[3]  The exclusion is actually entitled "'Fungus,' Wet Rot, Dry Rot, Bacteria or Virus" and is included in the "EXCLUSIONS" section of the "PROPERTY CHOICE – COVERED CAUSES OF LOSS AND EXCLUSIONS FORM" endorsement to plaintiff's policy.

[4]  Under the virus exclusion, "if direct physical loss or direct physical damage to Covered Property by a 'Specified Cause of Loss' results," defendant agreed to "pay for the resulting loss or damage caused by that 'Specified Cause of Loss.'" There is no coverage under this provision because, as we explain, plaintiff did not suffer a "direct physical loss or direct physical damage to Covered Property" under the policy.  Additionally, the policy contains two exceptions to the virus exclusion.  The exclusion does not apply "[w]hen 'fungus,' wet rot, dry rot, bacteria or virus results from fire or lightning," and, where, "coverage is provided in the Additional Coverage(s) – 'Fungus,' Wet Rot, Dry Rot, Bacteria

In its detailed written opinion granting defendant's summary judgment motion and denying plaintiff's motion for summary judgment, the motion court carefully considered and analyzed the pertinent policy provisions. The court found there was no business income or extra expense coverage because plaintiff did not establish that its "inability to use its premises to host large social gatherings[] constitute[d] physical loss of or physical damage to its property."

More particularly, the court found the policy provides business interruption coverage only where business losses and extra expense are "due to direct physical loss or direct physical damage to property caused by or resulting from a Covered Cause of Loss" at the property. The court concluded that because the closure of defendant's facility was the result of EO 107, and not any actual physical loss of or damage to plaintiff's property, the business losses resulting from closure were not covered under the policy's plain and unambiguous language. The court rejected plaintiff's argument that a "loss of use" alone constitutes "direct physical loss or direct physical damage." In other words, the court found that absent some actual physical loss of or damage to the

or Virus – Limited Coverage with respect to loss or damage by a cause of loss other than fire or lightning." Neither of the exceptions applies here.

property—as opposed to plaintiff's inability to open its facility pursuant to EO 107—plaintiff did not suffer a covered loss under the policy.

The court also rejected plaintiff's claim that it was entitled to coverage under the Civil Authority provision. The court noted there is coverage under the provision where "access to" plaintiff's property "is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area." The court held "plaintiff's claim fails" because plaintiff did not identify a "Covered Cause of Loss," meaning a "physical damage or loss in or near the Premises," that prompted the governmental orders. The court reasoned that a Covered Cause of Loss under the policy is defined as actual physical damage to or loss of property, and the record lacks any evidence plaintiff was denied use of its property under the EO 107 as "a direct result" of any such damage in the immediate area of its property. To the contrary, to the extent EO 107 denied plaintiff access to its property, the prohibitions and limitations imposed by the order were based solely on the threat posed by the COVID-19 pandemic.

The motion court further concluded the virus exclusion bars any claim for coverage under the policy. The court rejected plaintiff's argument the virus exclusion is inapplicable because it is limited to circumstances where a virus is

present at the insured property. The court noted other policy exclusions are conditioned upon circumstances being present on the insured property, but the virus exclusion is not. The court further found EO 107 was clearly issued in response to the threat posed by the COVID-19 virus, and, as such, any losses plaintiff suffered as a result of the mandated closure were "caused directly or indirectly by" the virus, and thus fell within the exclusion's plain language.

On appeal, plaintiff does not contend there are any genuine issues of material fact that precluded the court's summary judgment award to defendant. Instead, plaintiff reprises the arguments it made before the motion court and contends the court erred as a matter of law in its interpretation of the policy. Plaintiff claims it is entitled to coverage for the losses it suffered from the closure of its business pursuant to EO 107 because the closure constituted a "Covered Cause of Loss" under the policy. The argument is grounded in the contention the court erred by interpreting "direct physical loss of or direct physical damage to" its property to require actual physical damage or loss. Plaintiff contends, as does amici United Policyholders, that the closure of plaintiff's business pursuant to EO 107 constitutes a "direct physical loss of or direct physical damage to" its property within the meaning of the business

interruption and Covered Cause of Loss provisions of the policy and, for that reason, it is entitled to coverage.

Plaintiff also argues it is entitled to coverage under the Civil Authority provision because it is undisputed EO 107 constituted "an order of civil authority" under the policy, and, by mandating closure of plaintiff's facility, the order resulted in a direct physical loss of and direct physical damage to the insured property. Moreover, Plaintiff contends the virus exclusion is inapplicable because there is no evidence the virus was present on the property, and the closure of its business operations was caused by EO 107 and not by the COVID-19 virus.

We have carefully considered plaintiff's arguments, but it is unnecessary that we address them in detail in this opinion. In the first instance, we affirm the summary judgment orders substantially for the reasons set forth in the court's thorough and thoughtful written opinion. In addition, in our opinion in Mattdogg, Inc. v. Philadelphia Indemnity Insurance Company, we carefully considered, exhaustively addressed, and rejected the identical arguments plaintiff relies on in support of its appeal and amici contends support a reversal of the court's summary judgment orders. ___ N.J. Super. ___, ___ - ___ (App. Div. 2022) (slip op. at 22-52). Our reasoning and holdings in Mattdogg, Inc.

apply with syllogistic precision here, and they support our determination the court correctly granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1826-21